IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CONRAD P. SEGHERS**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-810-L** |
| | § | (Consolidated with 3:06-CV-1393-L) |
| **SUSAN E. WOODWARD** and | § | |
| **SAND HILL ECONOMETRICS, INC.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (i) Defendants' Motion for Summary Judgment or Alternatively Motion for Partial Summary Judgment, filed July 27, 2007; (ii) Defendants' Objections to Conrad P. Seghers'[s] Summary Judgment Evidence, filed October 3, 2007; and (iii) Plaintiff Conrad P. Seghers'[s] Motion for Summary Judgment, filed October 19, 2007. After careful consideration of the motions, briefs, responses, replies, appendices, competent summary judgment evidence, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment or Alternatively Motion for Partial Summary Judgment with respect to Seghers's claims for negligent misrepresentation, attorney's fees as damages, consequential damages, and damages for mental anguish; and **denies** the motion in all other respects; **sustains in part and overrules in part** Defendant's Objections to Seghers's Summary Judgment Evidence; and **denies** Plaintiff Conrad P. Seghers'[s] Motion for Summary Judgment.

# I.    Procedural and Factual Background

On May 5, 2006, Plaintiff Conrad P. Seghers ("Plaintiff" or "Seghers") filed suit against Susan E. Woodward ("Woodward") and Sand Hill Econometrics, Inc. ("Sand Hill", together with Woodward, "Defendants") for breach of contract, fraud, and negligent misrepresentation.[1] Woodward is a financial economist who served as the Chief Economist for the Securities and Exchange Commission ("SEC") and the United States Department of Housing and Urban Development. She owns and bills for most of her consulting work through Sand Hill. Seghers and James R. Dickey ("Dickey") founded Integral Investment Management, L.P. Integral Investment Management, L.P. was the general partner of several hedge funds ("Funds"). Seghers and Dickey offered and sold securities in the Funds. In 2001, the SEC began an investigation of Seghers and Dickey because of the amount of losses that the Funds experienced, and later filed a lawsuit against them in 2004. This case arises out of a dispute involving an oral contract between Seghers and Defendants for the provision of expert services in the SEC matter. Seghers contends that Woodward breached an oral contract by withdrawing as his expert and failing to testify during the SEC trial. Defendants contend that Seghers breached an oral contract by failing to pay as agreed. Defendants further contend that Woodward's refusal to testify was caused by Seghers's failure to pay the outstanding amounts due.

The court now sets forth the applicable facts upon which it relies to decide the pending summary judgment motions. This is a consolidated action.[2] Because each party has moved for

---

[1]Plaintiff's complaint is not a model of pellucid draftsmanship. Therefore, when necessary, the court has restated or recharacterized Plaintiff's claims to correctly reflect the applicable law.

[2]Woodward originally filed suit against Seghers, his attorney, and the attorney's firm in the Northern District of California. The California court later transferred the case to the Northern District of Texas, where it was consolidated with the action initiated by Seghers. The dominant and common claim in both cases is

summary judgment on the other's claims, both versions of disputed facts are included.  The standard

for deciding the summary judgment motions is set forth in the next section.

In 2002, Woodward was referred to Braden W. Sparks ("Sparks"), then counsel for Dickey,

as a potential expert for the SEC case.  In April 2002, at Sparks's request, Woodward traveled to

Dallas, Texas to meet with him, Dickey, Seghers, and his counsel, Larry Friedman ("Friedman").

At the meeting, Woodward received a $29,000 check from an entity owned by Seghers.  Seghers

states that the $29,000 was for the full payment of any future services to be rendered by Woodward.

Woodward states that $14,000 was for travel and time expended leading up to the meeting and that

$15,000 was a retainer for future services rendered.

Woodward then returned to California and reviewed various depositions and documents to

gain an understanding of the matter being investigated by the SEC.  She submitted two invoices to

Friedman totaling approximately $15,000 to $20,000.  It is unclear whether Woodward was paid in

full by Friedman.

On June 16, 2004, the SEC filed suit against Seghers and Dickey in the Northern District of

Texas, Civil Action Number 3:04-CV-1320-K.  On November 15, 2004, the SEC filed a motion for

summary judgment against Seghers.  In December 2004, Seghers and his new attorney, Charles B.

Manuel, Jr. ("Manuel") asked Woodward to prepare an expert report to assist in defeating the SEC's

motion for summary judgment.  Woodward states that she prepared and submitted the requested

expert report.  Seghers states that although Woodward reviewed various documents in preparation

for the expert report, he drafted, created, and prepared the expert report and Woodward merely made

edits.

---

the breach of contract claim.

On January 6, 2005, Woodward sent her standard retainer agreement, which set forth the terms under which her services would be rendered, to Manuel and Sparks . Woodward states that this was for her work on the SEC matter. Seghers states that this and any other communications about fees were in regards to other litigation, including litigation involving the Art Institute of Chicago and Morgan Stanley Dean Witter Discover.

On February 7, 2005, Woodward sent Manuel an invoice to be forwarded to Executive Risk Indemnity, Inc. ("ERII"), which is Seghers's directors and officers liability insurance carrier, for the services rendered in preparing the expert report. The invoice, which indicated that Woodward spent 71.5 hours preparing the report at an hourly rate of $600 per hour, totaled $42,900. On February 14, 2005, Woodward e-mailed Manuel to inquire about when she should expect payment. Manuel responded that it would likely be forty-five to sixty days. The invoice was submitted to ERII, and ERII refused to pay it.

After the court denied the SEC's motion for summary judgment, Dwayne Hermes ("Hermes"), Dickey's new attorney, contacted Woodward to schedule a meeting with her in California (where she officed) so that he could interview her and confirm her engagement on behalf of Seghers and Dickey. Manuel also attend the meeting. Woodward states that during this meeting, her retainer agreement was discussed and that Manuel stated that she could consider her retainer agreement signed.

Woodward states that after the meeting in California, it was decided that she would only be retained to render expert services for Seghers. Also after the meeting in California, Seghers requested that Woodward prepare a second expert report. According to Woodward, she prepared and submitted the requested expert report. Seghers, however, states that he essentially prepared the

expert report and Woodward only made minor edits and signed it.  On March 7, 2005, Woodward sent Manuel an invoice to be forwarded to ERII for the services rendered in preparing the expert report.  The invoice, which indicated that Woodward spent 73.5 hours preparing the report at an hourly rate of $600 per hour, totaled $44,100.  This invoice was also submitted to ERII, and ERII refused to pay it.

On March 12, 2005, Seghers e-mailed Woodward to suggest that she send copies of her invoices to Manuel so that he could submit them to Chubb (an insurance carrier that was being asked to pay the bills) along with the bills for his legal services.  Woodward complied on March 14, 2005.  Seghers called Woodward to request that she adjust the billing rates on past and future invoices as the insurance company only covered up to $425 per hour for expert services.  Woodward refused because, according to her, Seghers requested that she lower her billing rate and increase the number of hours billed to equal the same invoice total.  Woodward states that the requested billing changes would constitute insurance fraud.

In early May 2005, Seghers informed Woodward that a receiver had obtained an injunction that barred the payment of insurance proceeds to him and Dickey.  On May 20, 2005, Manuel advised Woodward that the receiver lawsuit would be settled as early as the following week and that everyone's fees would be paid out of the proceeds but the proceeds were insufficient to cover the total amount of outstanding the fees.  On June 2, 2005, Woodward's attorney sent Manuel a demand letter for $87,000, the amount of the outstanding invoices.  On June 9, 2005, Manuel refused to pay the $87,000.  On July 20, 2005, Woodward terminated her services and filed suit against Seghers, Manuel, and Manuel's firm in the Northern District of California seeking recovery for fees allegedly owed to her for services rendered to Seghers.

In the SEC case, Seghers states that negotiations with the SEC were terminated when it discovered that Woodward would no longer serve as his expert witness. On September 15, 2005, Seghers's deadline to designate and provide expert reports was extended to November 5, 2005, and the deadline for expert discovery was extended to November 18, 2005. Conrad Seghers's Witness List in that case, filed January 23, 2006, indicated that Woodward was a probable expert witness who would testify as set forth in her expert report and background statement; however, Woodward did not testify. On March 1, 2006, the jury returned a verdict in favor of Seghers on the SEC's claim that he violated Section 5 of the Securities Act of 1933 ("the 1933 Act") and in favor of the SEC on its claims that Seghers violated the antifraud provisions of Section 17(a) of the 1933 Act; Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5; and Section 206 of the Investment Advisers Act of 1940.

In the Woodward case, on May 1, 2006, Seghers filed a counterclaim against Woodward and Sand Hill for breach of contract and fraud. On May 5, 2006, he filed a complaint against them in the Northern District of Texas seeking recovery for breach of contract, fraud, and negligent misrepresentation. Seghers filed a motion in California to transfer the California action to Texas. On July 28, 2006, the Northern District of California granted his motion and transferred Woodward's case to the Northern District of Texas. On July 2, 2007, Woodward filed an amended complaint seeking recovery for breach of contract and *quantum meruit*. On November 7, 2006, the court consolidated the two cases.

Defendants filed a motion for summary judgment on April 26, 2007. They contend that there was no contract or agreement for Woodward to perform any future services for Seghers, including testifying as an expert witness, for the sum of $29,000. Therefore, Defendants argue, there was no

fraudulent inducement into or negligent misrepresentation of the terms of such an agreement and they are entitled to summary judgment on all claims. Defendants argue in the alternative that even if there were a genuine issue of material fact as to whether such an agreement existed and whether Woodward breached the agreement, no act or omission of Woodward was the proximate or producing cause of any of Seghers's alleged consequential damages. Defendants contend that they are, therefore, entitled to partial summary judgment that Seghers's damages are limited to $29,000.

On October 19, 2007, Seghers filed a motion for summary judgment contending that he never agreed to Woodward's $600 hourly rate, that Woodward did not work the 145 hours for which she billed, and that even had Woodward worked 145 hours at $400 (the rate that Seghers says the parties agreed to for her services for other, unrelated ligation), the amount owed would be $58,000. According to Seghers, because Woodward had been hired to assist both him and Dickey, the $58,000 should be divided equally between them, and the $29,000 he has already paid satisfies his portion of the balance. Therefore, Seghers argues, he is entitled to summary judgment on Woodward's claims.

## II. __Summary Judgment Standard__

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a

motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to

establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. <u>Analysis</u>

### A. **Defendants' Motion for Summary Judgment**

Seghers filed a complaint against Defendants alleging breach of contract, fraud, and negligent misrepresentation, based upon Woodward's failure to testify as his expert witness at the SEC trial. Defendants move for summary judgment and contend that there is no evidence that there was a contract or agreement for Woodward to perform her services, including testifying as an expert witness, for only $29,000. Therefore, Defendants argue, there was no breach of, fraudulent inducement into, or negligent misrepresentation of the terms of such an agreement, and they are entitled to summary judgment on all claims.

#### 1. **Breach of Contract**

Seghers contends that in 2002, Defendants agreed that Woodward would serve as his expert during the SEC investigation for the sum of $29,000. This agreement, according to Seghers, also included Woodward's testimony as his expert witness at the SEC trial. Defendants counter that there is no evidence that there was a contract or agreement for Woodward to perform any future services for Seghers, including testifying as an expert witness, for the sum of $29,000. Therefore, Defendants argue, her failure to testify did not constitute a breach of such an agreement, and they are entitled to summary judgment on this claim.

To recover for breach of contract, a plaintiff must show "(1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach." *James M. Clifton, Inc. v.*

*Premillenium, Ltd.*, 229 S.W.3d 857, 859 (Tex. App.–Dallas 2007, no pet.).  At issue in this case is whether Woodward breached the contract between Defendants and Seghers.

The parties agree that in April 2002, Woodward received a $29,000 check from an entity owned by Seghers and that there was an oral agreement for her to render expert services to him in the SEC matter.  There are three different versions, however, of the terms of the oral agreement.  Seghers states that the $29,000 was for the full payment of any future services to be rendered by Woodward in the SEC matter.  Seghers Aff. ¶ 4, Sept. 14, 2007.  Dickey states that $4,000 was for travel expenses, initial research, and interviews and $25,000 was a retainer for future services that would be billed against at an hourly rate of $400.  Dickey Aff. ¶ 3.  Woodward states that $14,000 was for travel and time expended leading up to the meeting and that $15,000 was a retainer for future services that would be billed against at an hourly rate of $600.  Woodward Aff. ¶ 3.  The terms of the contract are in dispute and must be ascertained before it can be determined whether Woodward's failure to testify constituted a breach.  Since a reasonable jury can return a verdict for either party based upon which of the three versions it believes, a genuine issue of material fact exists.  A court cannot make a credibility determination or weigh evidence in ruling on a motion for summary judgment.  Accordingly, Defendants are not entitled to judgment as a matter of law on Seghers's breach of contract claim.

## 2.      Fraudulent Inducement

Seghers contends that he relied on Woodward's representation that she would, for the sum of $29,000, serve as his expert during the SEC investigation and act as his expert witness at the SEC trial, and that these misrepresentations induced him into entering the contract with Defendants. Defendants counter that the agreement was that the $29,000 included $14,000 for travel and time expended leading up to the meeting and the $15,000 was a retainer for future services that would be billed against at an hourly rate of $600. Defendants argue that since Woodward acted in compliance with that agreement, there was no misrepresentation. Therefore, Defendants contend, they are entitled to summary judgment on this claim.

In order to maintain a cause of action for fraudulent inducement, a party must show that:

> (1) a material representation was made;
> (2) the representation was false;
> (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;
> (4) the speaker made the representation with the intent that the other party should act upon it;
> (5) the party acted in reliance on the representation; and
> (6) the party thereby suffered injury.

*In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). As with the breach of contract claim, a reasonable jury could choose to believe either party's version of the terms of the contract. If the jury believes the version advanced by either Woodward or Dickey, it could find that there was no material misrepresentation. On the other hand, if the jury believes Seghers's version, it could find that there was a material and false representation on which Seghers relied and that he suffered injury as a result of such reliance. Therefore, a genuine issue of material fact exists, and Defendants are not entitled to judgment as a matter of law on Seghers's fraudulent inducement claim.

### 3.        Negligent Misrepresentation

Seghers contends that Defendants had a duty to fully disclose their billing methods and that he was induced into entering the contract with Defendants by Woodward's misrepresentation of the billing methods. Defendants counter that Seghers fails to state a claim for negligent misrepresentation and that this claim is merely a reiteration of his fraudulent inducement claim. Therefore, Defendants contend, they are entitled to summary judgment on this claim.

To recover on his claim for negligent misrepresentation, Seghers must show that:

> (1) the representation is made by a defendant in the course of [her] business, or in a transaction in which [s]he has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 686 n.24 (Tex. 2002); *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Seghers states that Woodward represented that she would render expert services for a flat fee of $29,000, including testifying at trial, that the representation was false, and that he suffered damages as a result. The false information for which this cause of action provides a remedy, however, must be a misrepresentation of an existing fact rather than a promise of future conduct. *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 379 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Seghers's negligent misrepresentation claim is based upon Woodward's alleged promise that she would provide services in the future and her alleged breach of that promise. Moreover, there must be an independent injury, other than a breach of contract, to support a negligent misrepresentation finding. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998). As Seghers's claim for negligent misrepresentation is based upon

a breach of the contract rather than an independent injury, it fails as a matter of law. For these reasons, Defendants are entitled to judgment as a matter of law on Seghers's negligent misrepresentation claim.

### B. Defendants' Alternative Motion for Partial Summary Judgment

Defendants contend that Seghers's conduct was the sole cause of his injuries and that no act or omission of Woodward was the proximate or producing cause of any of the damages that Seghers seeks to recover. Defendants also contend that, regardless of the theory of recovery on which Seghers might be successful, his damages should be limited to $29,000 less the value of the services rendered.

According to Seghers, upon learning that Woodward would not testify at trial, the SEC terminated settlement negotiations with him, which caused an unnecessarily prolonged trial and an adverse jury verdict for violations of certain securities laws. Seghers contends that Woodward's actions forced him to go to trial and caused the adverse verdict. He seeks compensatory damages and damages for pain and suffering for each of his three causes of action against Defendants and attorney's fees on his breach of contract claim. In total, Seghers seeks in excess of $25 million in damages.

The court addresses the damages available for each cause of action in turn. As the court has herein determined that negligent misrepresentation is not a viable theory of recovery, it does not address damages for negligent misrepresentation.

### 1. Breach of Contract

Seghers contends that the SEC's discovery of Woodward's withdrawal as his expert and refusal to testify forced him to go to trial in the SEC case and caused an adverse jury verdict. He

seeks $10 million in compensatory damages, damages for pain and suffering, and attorney's fees as damages resulting from the trial. According to Defendants, "[a]ny expenses and legal fees Seghers incurred as a result of the SEC litigation . . . were the result of Seghers'[s] own conduct and not the acts or omissions of Woodward." Defs.' Mot. Summ. J. 10-11.

The objective in awarding damages for a breach of contract case is to provide just compensation for the loss actually sustained by the complaining party. *Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.–Houston [14th Dist.] 2006, no pet.). The measure of damages for breach of contract is generally the benefit-of-the-bargain measure. *Id.* This measure represents the difference between the value expected from the contract and the value actually received by the non-breaching party. *Frost Nat'l Bank v. Heafner*, 12 S.W.3d 104, 111 n.5 (Tex. App.–Houston [1st Dist.] 1999, pet. denied). Consequential damages are recoverable if they are foreseeable and directly traceable to the wrongful act and result from it. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997). Consequential damages are those damages that "result naturally, but not necessarily, from the defendant's wrongful acts." *Id.* Mental anguish damages are not recoverable for breach of a contract. *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 562 (Tex. App. –Austin 2004, no pet.).

Seghers expected Woodward to render her services as an expert in the SEC case, including her testimony at trial, for $29,000. The proper, measure of her failure to testify, therefore, is $29,000 (the value expected from the contract) minus the value of Woodward's services Seghers actually received. Because mental anguish damages are not recoverable for breach of a contract, Defendants are entitled to judgement as a matter of law on any damages claim for pain and suffering with respect to this claim.

### 2.    Fraudulent Inducement

Seghers contends that he relied on Woodward's representation that she would serve as his expert during the SEC investigation and act as his expert witness at the SEC trial for the sum of $29,000, and that these misrepresentations induced him into entering the contract with Defendants. He seeks $10 million as compensatory damages and $5 million for pain and suffering. Defendants contend that Seghers is not entitled to recover over $10 million in damages based upon this theory of recovery. The court agrees.

Common law divides actual damages into two categories: direct damages and consequential damages. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007). The court addresses consequential damages in the next section. In *Sonnichsen*, with respect to direct damages, the court stated:

> Direct damages compensate for the loss that is the necessary and usual result of the act. Texas recognizes two measures of direct damages for common-law fraud: out-of-pocket and benefit-of-the-bargain. Out-of-pocket damages, which derive from a restitutionary theory, measure the difference between the value of that which was parted with and the value of that which was received. Benefit-of-the-bargain damages, which derive from an expectancy theory, evaluate the difference between the value that was represented and the value actually received.

*Id.* (internal quotation and citation omitted).

As Defendants correctly argue, if Seghers prevails on his fraudulent inducement claim, he is only entitled to recover $29,000 minus the value of Woodward's services he actually received, regardless of which measure of direct damages is used. Under the out-of-pocket measure, Seghers would be entitled to the difference between $29,000 (the value of that which was parted with) and the value of the services received. Under the benefit-of-the-bargain measure, Seghers would be

entitled to the difference between $29,000 (the value that was represented) and the value actually received. The proper measure of damages for the fraudulent inducement claim, therefore, is $29,000 minus the value of Woodward's services actually received by Seghers.

Further, Seghers is not entitled to recover damages for pain and suffering. The only evidence in the record to support any recovery for mental anguish is the following statement in Seghers's affidavit: "My entire life and career and income [have] been destroyed by the Defendants who directly caused the SEC trial itself to occur (settlement communications stopped upon the SEC learning of Ms. Woodward's resignation as Expert Witness for Seghers), and the Defendants are also directly responsible for the negative verdict." Seghers Aff. ¶ 73, Oct. 2, 2007. Under Texas law, it is well established that:

> [m]ental anguish damages could not be awarded without either direct evidence of the nature, duration, or severity of plaintiffs' anguish, thus establishing a substantial disruption in the plaintiffs' daily routine, or other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.

*Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (internal quotations, brackets, and citation omitted). Making every inference in Seghers's favor, the quoted statement from Seghers's affidavit may qualify as competent summary judgment evidence of a high degree of mental pain and distress. To recover these damages, however, Seghers must also show that they were caused by Defendants. Seghers comes forward with no competent summary judgment evidence that Defendants caused these damages. Because Seghers's alleged mental anguish damages flow from the same injury or conduct as that for his attorney's fees damages and consequential damages, he is not entitled to these damages as discussed fully below. Accordingly,

Seghers has not raised a genuine issue of material fact on his mental anguish damages, and Defendants are entitled to judgment as a matter of law on his claim for these damages.

### 3. Attorney's Fees and Consequential Damages

Seghers contends that a "ripple effect" ensued after the SEC learned that Woodward would not testify at trial. According to Seghers, settlement negotiations were ongoing with the SEC, but they ceased when the SEC learned that Woodward would not testify at trial. Seghers contends that as a result of the cessation of settlement negotiations with the SEC, he was forced to go to trial, and the trial resulted in an adverse jury verdict. Seghers seeks damages for attorney's fees incurred as a result of Woodward's withdrawal as his expert witness and failure to testify at the SEC trial, and he appears to also seek consequential damages for this alleged breach. Defendants contend that Seghers is not entitled to such damages because they were the result of Seghers's conduct rather than any acts or omissions of Woodward.

There is a split in the Texas intermediate appellate courts as to whether a party may recover attorney's fees and expenses incurred in a prior lawsuit with a third party as damages in a subsequent lawsuit. *Akin, Gump, Strauss, Hauer, & Feld, L.L.P. v. National Dev. & Research Corp.*, 232 S.W.3d 883, 896 (Tex. App.–Dallas 2007, pet. filed). The courts that hold that a plaintiff may recover such damages conclude that, as a general rule, a party may recover the reasonable expenses incurred in prior litigation with a third party as damages in a subsequent lawsuit only when such damages are the natural and proximate consequence of the defendant's wrongful conduct. *See, e.g., Lesikar v. Rappeport*, 33 S.W.3d 282, 306 (Tex. App.–Texarkana 2000, pet. denied) (holding plaintiff may recover attorney's fees as damages where defendant's wrongful conduct forces plaintiff to prosecute or defend litigation in another proceeding).

Consequential damages are those that "result naturally, but not necessarily, from the defendant's wrongful acts." *Arthur Andersen*, 945 S.W.2d at 816. Although these damages are not required to be the usual result of the wrong, they must be foreseeable and they must be directly traceable to and result from the wrongful act. *Id.* (internal citation omitted).

Damages are an essential element to Seghers's case and an element upon which he bears the burden of proof at trial. In order to survive summary judgment, Seghers must make a showing sufficient to establish the existence of his damages. Seghers's claims for both attorney's fees as damages and consequential damages rely on his ability to prove that such damages were caused by Defendants' wrongful conduct. Because Seghers comes forward with no such competent summary judgment evidence, he fails to meet his burden.

The record is devoid of any competent summary judgment evidence to establish that Woodward caused Seghers's attorney's fees damages or consequential damages. Seghers contends that the SEC's discovery of Woodward's refusal to testify caused it to terminate settlement negotiations, forced him to go to trial in the SEC case, caused the adverse jury verdict, and resulted in fines and a loss of his livelihood. Other than his subjective belief, conclusory allegations, and speculation, which are insufficient as a matter of law, Seghers offers no competent summary judgment evidence to support his contentions. Seghers offers no documentation to establish which party terminated the settlement negotiations or the reason for the termination. Moreover, he comes forward with no proof that the jury would have reached a different result and ruled in his favor if Woodward had testified. Therefore, Seghers has not met his burden of raising a genuine issue of material fact concerning his claim for attorney's fees as damages or consequential damages. Accordingly, Defendants are entitled to judgment as a matter of law on these claims.

### C.   Defendant's Objections to Seghers's Summary Judgment Evidence

Defendants have filed objections to Seghers's summary judgment evidence. Specifically, Defendants object to paragraph 6 of Dickey's Affidavit, as they contend that Dickey lacks personal knowledge of the subject matter. Paragraph 6 begins with "To my knowledge . . . ." It is clear that the statement is based on, and limited to, Dickey's personal knowledge. Accordingly, the court **overrules** Defendant's objections to paragraph 6 of Dickey's Affidavit. Defendants also object to paragraphs 6, 9, 10, 16, and the first sentence of paragraphs 7 and 11 of Seghers's September 14, 2007 Affidavit. Defendants contend that the objectionable statements in paragraphs 6, 7, 9-11 simply set forth Seghers's argument and state his disagreement with Woodward's summary judgment evidence and that paragraph 16 is based upon hearsay. Affidavits must set forth facts that would be admissible in evidence. Fed. R. Civ. P. 56(e). Seghers's objectionable statements are not admissible statements of fact; they are merely argument. Accordingly, the court **sustains** Defendant's objections to paragraphs 6, 9, 10, and the first sentence of paragraphs 7 and 11 of Seghers's September 14, 2007 Affidavit. The court also **sustains** Defendant's objection to paragraph 16, except for the portion of the third sentence that indicates that Seghers never had in-person meetings with Woodward after 2002. The remainder of paragraph 16 constitutes inadmissible hearsay.

### D.   Plaintiff's Motion for Summary Judgment

Woodward alleges causes of action for breach of contract and *quantum meruit*. Seghers states that he never agreed to Woodward's $600 hourly rate, that Woodward did not work the 145 hours for which she billed, and that even had Woodward worked 145 hours at $400 (the rate that Seghers says the parties agreed to for her services for other, unrelated ligation), the amount owed

would be the $29,000 he has already paid.  Therefore, Seghers argues, he is entitled to summary judgment on Woodward's claims.

As previously stated, a genuine issue of material fact exists as to the terms of the oral contract between Seghers and Woodward.  Accordingly, Seghers is not entitled to summary judgment on Woodward's breach of contract claim.  Woodward's *quantum meruit* claim requires proof that Woodward rendered valuable services to Seghers and that he accepted, used, and enjoyed those services under such circumstances that he was reasonably notified that she expected to be paid for them.  Because the parties disagree as to whether Woodward was paid in full for her services, there is a genuine issue of material fact with respect to this claim.  Accordingly, Seghers is also not entitled to summary judgment on Woodward's *quantum meruit* claim.

## IV.   Conclusion

For the reasons herein stated, genuine issues of material fact exist with respect to Seghers's breach of contract and fraudulent inducement claims.  There are no genuine issues of material fact as to his claim for negligent misrepresentation, attorney's fees as damages, consequential damages, or for damages for mental anguish.  Therefore, Defendants are entitled to judgment as a matter of law only as to these claims.  Accordingly, the court **grants** Defendant's Motion for Summary Judgment or Alternatively Motion for Partial Summary Judgment with respect to Seghers's claims for negligent misrepresentation, attorney's fees as damages, consequential damages, and damages for mental anguish; and **denies** the motion in all other respects.  The court also **sustains in part and overrules in part** Defendant's Objections to Seghers's Summary Judgment Evidence.  Moreover, because there are genuine issues of material fact as to both of Woodward's claims, the court **denies** Plaintiff Conrad P. Seghers'[s] Motion for Summary Judgment.

**Memorandum Opinion and Order- Page 20**

**It is so ordered** this 8th day of February, 2008.

Sam A. Lindsay
United States District Judge